UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**DAVID MERO**                                                                                     **PETITIONER**
ADC #16744-171

V.                              No. 2:22-CV-72-DPM-ERE

**JOHN P. YATES,**
**Warden, FCI-Forrest City Low**                                                **RESPONDENT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States Chief District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

**I.     INTRODUCTION**

David Mero, an inmate at the Federal Correctional Institution in Forrest City, Arkansas ("FCI-FC"), filed a 28 U.S.C. § 2241 petition for a writ of habeas corpus (*Doc. 1*), alleging that the Bureau of Prisons ("BOP") has failed to apply "earned time credits" or "time credits" to which he is entitled under a provision of the First Step Act of 2018 ("FSA"), Pub. L. No. 115-391, § 101, 132 Stat. 5194, codified at

1

18 U.S.C. § 3632(d)(4)). For reasons that follow, the Court recommends that the petition be dismissed, without prejudice, based on Mr. Mero's failure to exhaust his administrative remedies.

## II.   BACKGROUND

On July 18, 2017, Mr. Mero pleaded guilty to conspiracy to commit bank and mail fraud and aggravated identity theft in the United States District Court for the Eastern District of Virginia. *United States v. Mero*, No. 4:17-cr-00013-MSD-RJK, ECF No. 32 (E.D. Va. July 18, 2017). On April 23, 2018, he was sentenced to 116 months in prison, followed by five years of supervised release. *Id.*, ECF No. 59. According to the BOP's website,[1] Mr. Mero's anticipated release date is November 4, 2024.

On April 29, 2022, Mr. Mero filed a § 2241 habeas petition alleging that, if properly calculated, his FSA time credits would reduce his projected release date and allow his placement in a halfway house "somewhere around November 2022." *Doc. 1 at 9*. However, in a supplement to his petition, Mr. Mero clarifies that he seeks a total 615 days of FSA time credits. *Doc. 10 at 1*. He contends that if properly applied, 365 of his earned time credits will reduce his projected release date from November 4, 2024 to November 4, 2023, and the remaining 250 should be deducted

---

[1] See www.bop.gov/inmateloc/ (last accessed Sept. 27, 2022).

from his period of supervised release.[2]

In a substituted response filed August 25, 2022, Respondent asserts that Mr. Mero's petition should be dismissed for failure to exhaust his administrative remedies. *Doc 15*.

In replies filed August 29 and September 6, 2022, Mr. Mero argues that he submitted the appropriate form BP-9 necessary to exhaust his administrative remedies, but an FCI-FC case manager failed to submit the form to the proper office. *Doc. 17 at 1-2*; *Doc. 19 at 1*.

Mr. Mero has filed additional information. On September 14, 2022, he filed a copy of a BOP memo regarding FSA time credits. *Doc. 20 at 3-8*. The memo announces the August 31, 2022 launch of a time credit "auto-calculation application." *Id. at 3*. The memo states:

> Full automation will take effect on September 6, 2022, at which time changes will be reflected to inmates' projected release dates and methods. All inmates will be reviewed, and [time credits] will be applied to inmate records consistent with the final rules language and implementing text.

*Id*. Finally, on September 26, 2022, Mr. Mero filed information about BOP regulations concerning the time credit program. *Doc. 21*.

---

[2] The "earned time credits" Mr. Mero seeks affect when he is eligible for transfer into prelease custody, but do not reduce his sentence or his term of supervised release. This is in contrast to "good time credits," which apply toward the service of a sentence based on good behavior, see 18 U.S.C. § 3624(b).

## III. DISCUSSION

### A. Earned Time Credits Under the FSA

A federal prisoner's pre-release placement occurs at the latter stages of a sentence when he or she, if eligible, prepares for reintegration to society through custody in home confinement or a residential reentry center, also known as a community correctional facility. The BOP is charged by statute as follows:

> The Director of the [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1).

The FSA created an earned time credit program to assist the prisoner reintegration process, under which eligible prisoners can earn ten days of time credits for every thirty days of successful participation in evidence-based recidivism reduction ("EBRR") programming or productive activities ("PA's"). 18 U.S.C. § 3632(d)(4)(A)(i). In addition, "[a] prisoner determined by the [BOP] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in [EBRR] programming or [PA's]." 18 U.S.C. § 3632(d)(4)(A)(ii).

4

BOP regulations specify that December 21, 2018, the FSA enactment date, marks the date on which an inmate begins to earn FSA time credits, but the standard for awarding time credits varies depending on the time frame at issue. A BOP regulation, effective January 19, 2022, states that an eligible inmate[3] may earn FSA time credits for "programming and activities in which he participated in from December 21, 2018 until January 14, 2020." 28 C.F.R. § 532.42(b)(1). However, beginning January 15, 2020, an eligible inmate may earn FSA time credits only for "successfully participating in EBRR programs or [PA's] that the [BOP] has recommended based on the inmate's individualized risk and needs assessment on or after January 15, 2020." 28 C.F.R. § 532.42(b)(2).[4]

---

[3] Another BOP regulation defines "eligible inmate" as follows:

(1) Eligible to earn FSA Time Credits. An inmate who is eligible to earn FSA Time Credits is an eligible inmate for the purposes of this subpart. Any inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is eligible to earn FSA Time Credits, subject to the exception described in paragraph (d)(2) of this section.
(2) Exception. If the inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. 3632(d)(4)(D), the inmate is not eligible to earn FSA Time Credits.

28 C.F.R. § 523.41

[4] The distinction between participation in "programming and activities" (between December 21, 2018 and January 14, 2020) and participation in "EBRR programs and PAs" (after January 15, 2020) is a product of: (1) the BOP's decision to award FSA time credits for programs completed beginning on December 21, 2018; and (2) the phased-in implementation of the FSA earned time credit program. The FSA required that the BOP provide EBRR programs and PAs two years *after* the date on which the BOP completed a risk and needs assessment for each prisoner . . . ." 18 U.S.C. § 3621(h)(2)A). In a January 15, 2020 press release, the Department of Justice announced that all BOP inmates had received an initial assessment using a risk and needs assessment tool known as the Prisoner Assessment Tool Targeting Estimated Risk and Need

Mr. Mero claims entitlement to time credits that span both time periods referenced under 28 C.F.R. § 532.42(b),[5] but he provides no information regarding his individualized risk and needs assessment or whether he participated in BOP-recommended programs.

B. **Exhaustion of Administrative Remedies**

A federal inmate must normally exhaust his administrative remedies before seeking habeas relief under § 2241. *Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974). This judicially created exhaustion requirement is not mandated by statute or a jurisdictional prerequisite, see *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007), but its fulfillment promotes several purposes:

> (1) the development of the necessary factual background upon which the claim is based; (2) the exercise of administrative expertise and discretionary authority often necessary for the resolution of the dispute; (3) the autonomy of the prison administration; and (4) judicial efficiency from the settlement of disputes at the prison level.

*Mason v. Ciccone*, 531 F.2d 867, 870 (8th Cir. 1976) (citing *McKart v. United States*, 395 U.S. 185, 194-195 (1969)).

---

("PATTERN"). Press Release, https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act. The press release also announced that going forward, inmates would be assigned to participate in EBRR programs and PA's based on their initial needs assessment. *Id*.

[5] In the supplement to his petition, Mr. Mero states that he seeks 360 days FSA time credits for "programming" completed from March 4, 2019 through February 9, 2021. *Doc. 10 at 1*. He also seeks 255 days of FSA time credits for PAs working as a tutor from January 19, 2019 through December 18, 2020. *Id*.

The BOP has a four-step administrative process for resolving inmate grievances: (1) an attempt at informal resolution with prison staff; (2) submission of a formal grievance to the Warden, on form BP-9, delivered to the institution staff member designated to it; (3) an appeal of an unfavorable Warden's decision to the appropriate Regional Director, on form BP-10; and (4) an appeal of an unfavorable Regional Director's decision to the General Counsel, on form BP-11. See 28 C.F.R. §§ 542.13–542.18. Proper exhaustion of administrative remedies "'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

By declaration, Rashonda Smith, a BOP Associate Warden's Secretary, states that all inmate grievance submissions (BP-9 or above) are recorded and maintained in a BOP data base called SENTRY.[6] *Doc. 15-1 at 3*. Respondent submits a SENTRY report documenting Mr. Mero's grievances and appeals, which shows that his attempts to exhaust his administrative remedies related to his earned time credits proceeded under two SENTRY-assigned case numbers: 112947 and 116518. *Doc. 15-1 at 15-17*. As detailed below, in both cases, the exhaustion process went off

---

[6] Ms. Smith explains that when a prisoner makes a submission, the SENTRY system assigns a case number, followed by a suffix that changes as the case proceeds through the exhaustion process: "F1" for BP-9 grievances submitted to the Warden; "R1" for appeals submitted to the Regional Director; and "A1" for appeals to the General Counsel. *Doc. 15-1 at 3*.

track at step 2, the institutional level, because a B-9 grievance submitted by Mr. Mero was not forwarded to the Warden.

**Grievance Case Number 116518**

On January 24, 2022, Mr. Mero submitted a request for informal resolution, requesting "calculation of all earned First Step Act . . . days . . . ." *Doc. 1, at 16*. A correctional counselor's response, dated January 26, 2022, reads: "Region[al] is the only place that calculates how many days you will receive credit[] due to FSA." *Id*.

On January 27, 2022, Mr. Mero submitted a BP-9 grievance[7] to his case manager, Mr. Sanderson. A copy of the BP-9 form, signed by Mr. Mero, does not include the name of the FCI-FC staff member who received it--that signature line is blank. *Id*. However, the grievance includes the case number, 116518, handwritten in a portion of the form reserved for a response, which is otherwise empty. *Id*.

The record supplies no information as to whether Mr. Sanderson is the individual designated to receive BP-9 grievances at FCI-FC. However, along with his reply, Mr. Mero submits a copy of August 31, 2022 "to whom it may concern" memo signed by Case Manager D. Sanderson, which states:

> I am submitting this memo in support of David Mero #16744-171. Mr. Mero did follow the policy listed in 524.14 of the program statement

---

[7] The grievance states:

I am exhausting my administrative remedy process . . . to get the response to my original question I asked on 1-17-22, regard[ing] how many First Step Act credited days to I have coming. My calculation suggest[s] a reduction to roughly November 2022, placement in halfway house. Please advise.

>1330.18, "Initial Filing." He turned in the BP 9 on or around January 27, 2022 and the error was not [the] fault of inmate Mero.

*Doc. 19 at 4*.

Mr. Mero's BP-9 grievance was apparently *not* submitted to the Warden but, instead, submitted as an appeal to the Office of General Counsel, step 4 of the BOP's exhaustion procedure. The grievance bears a stamp mark showing it was received by the BOP's Administrative Remedy Section on April 6, 2022.

Respondent's SENTRY report confirms that Mr. Mero's grievance for case number 116518 was received by the Office of General Counsel on April 6 and denied on April 11. *Doc. 15-1 at 17*. Mr. Mero submits a copy of the corresponding rejection notice, which states:

>You submitted your request or appeal to the wrong level. You should have filed at the institution, regional office, or central office level.

>You must first file a BP-9 request through the institution for the Warden's review and response before filing an appeal at this level.

*Doc. 17 at 8*.

Despite this notice, Mr. Mero did not resubmit this grievance for the Warden's review and response.

**Grievance Case Number 112947**

On January 17, 2022, Mr. Mero submitted an "inmate request to staff," fulfilling step 1 of the BOP exhaustion procedure, asking that his earned time credits be applied to his halfway house eligibility date. *Doc. 1 at 16*.

9

Mr. Mero, apparently on the advice of an FCI-FC staff member, skipped step 2 of the process, which required that he submit a BP-9 grievance to the Warden. Instead, on February 17, 2022, he submitted an appeal to the Regional Director, assigned case number 1112947, requesting that "all of [his] credits be applied right away." *Doc. 17 at 14*; *Doc. 15-1 at 16*. Respondent's SENTRY report shows that the appeal was received on February 25, 2022 and denied on March 9, 2022, with the remark: "File BP-9 after attempting information resolution at the institutional level." *Doc. 15-1 at 16*.

On March 23, 2022, Mr. Mero received the rejection notice denying his BP-10 appeal, and on March 29, he appealed to the Office of General Counsel, using form BP-11. *Doc. 17 at 19*. In that appeal, Mr. Mero acknowledged that the Regional Director had denied his BP-10 appeal because he failed to file a grievance with the FCI-FC Warden. *Id*. But he explained:

> I submitted a cop-out [informal grievance] to my case manager on 1/17/22. At that time[,] Mr. Sanderson told me that he could not help me because what I was looking for was done at the Central Office Level. I followed protocol, BP-8, BP-9, and then a BP-10 . . . to fully exhaust my administrative remedies. I cannot force any staff member to follow protocol, sign into the book the request of administrative remedy document request. I simply seek a calculation of my First Step Act Credits.

*Id*.

On April 11, 2022, the General Counsel denied Mr. Mero's appeal because he had not filed a grievance with the Warden. *Doc. 15-1 at 17*.

With respect to Grievance Case Number 116518, the record shows that Mr. Mero submitted a BP-9 grievance for the Warden's review, but apparently due to a case manager's error, the grievance was not forwarded to the Warden. However, when Mr. Mero received written notice that his grievance had been rejected because it had not been submitted for the Warden's review, he took no action to correct that mistake. While events beyond Mr. Mero's control may have interrupted completion of the grievance process, he failed to take reasonable steps to steer the process back on course.

With respect to Grievance Case Number 112947, the record shows that Mr. Mero purposefully skipped the step 2, institutional-level review.  His argument that he took every step *possible* to exhaust his administrative remedies is simply not true. After receiving written instructions to file a BP-9 grievance at the institutional level, Mr. Mero chose not to do so. Instead, he filed an appeal with the General Counsel, which was predictably denied for failure to exhaust at the institutional level. Mr. Mero has not exhausted his administrative remedies, nor has he demonstrated that doing so would be futile.

The earned time credit program is new and multifaceted, and the authority to implement the program and calculate an inmate's time credits is delegated to the BOP, not federal courts. Mr. Mero's entitlement to earned time credits depends on facts absent from the current record, which are best developed in the administrative

process.

According to the BOP memo submitted by Mr. Mero, beginning September 6, 2022, all inmates' data will be reviewed and time credits will be applied according to recently implemented regulations. *Doc. 20 at 3*. If Mr. Mero disputes the BOP's initial calculation and application of his earned time credits, he must present his claim to the BOP, and follow each stop of the administrative exhaustion process, *before* seeking relief in federal court. If, after properly exhausting his administrative remedies, Mr. Mero disputes the BOP's final decision, he may return to federal court and seek relief under § 2241.

## IV. CONCLUSION

IT IS THEREFORE RECOMMENDED that Petitioner David Mero's petition for writ of habeas corpus (*Doc. 1*) be dismissed, without prejudice.

Dated this 27th day of September, 2022.

_____
UNITED STATES MAGISTRATE JUDGE